## Citizens Trust Co. of Clarion, Pa., v. Trunk et al.

512

*A. A. Geary*, for plaintiff.

*Theo. L. Wilson*, for garnishee.

LONG, P. J., fifty-fourth judicial district, specially presiding, April 20, 1937. . . .

Defendant, Mary Trunk, was the owner of savings account no. 3256 and had on deposit in the First National Bank of Clarion, Pa., at the close of business on May 21, 1932, the sum of $3,373.44 in said account. On that date Mary Trunk and J. E. Trunk, her husband, were indebted to said bank by virtue of two notes, one for $1,500, dated September 12, 1927, payable on demand after date, without defalcation, etc., on which interest was paid to May 1, 1932; the other note, in the sum of $7,000, was dated June 6, 1932, and was due August 5, 1932. On the latter note judgment was entered; the original note was held by the attorney who entered the judgment and a memorandum note in the sum of $7,000 given to the bank, the payee thereof. At the same time defendants, J. E. Trunk and Mary Trunk, were indebted to the Citizens Trust Company of Clarion, Pa., in the sum of $6,300, with interest from April 1, 1932, subject to a credit of $3,000 paid on January 20, 1932, the note evidencing which was entered in Clarion County on May 23, 1932, to no. 1, August term, 1932, and an attachment execution was immediately issued at no. 2, August term, 1932, and service made on the First National Bank of Clarion, Pa., garnishee, on May 23, 1932, at 10:20 a.m.

The record is silent as to service on defendants, J. E. Trunk and Mary Trunk, his wife; no question has been raised as to them.

The first item of business transacted by the garnishee on May 23, 1932, the date the attachment was served on it, was the appropriation of the sum of $1,505, being in full for its $1,500 demand note plus $5 accrued interest, against the savings account of Mary Trunk, one of the defendants, then on deposit. This left remaining, according to the garnishee's calculation, in said savings account the sum of $1,868.42. The garnishee held no further due or matured notes. However, it held a $7,000 note dated June 6, 1932, which became due August 5, 1932, and under date of August 29, 1932, the garnishee set off and appropriated from the savings account of Mary Trunk the total balance thereof, $1,868.42, which it applied toward the payment of its $7,000 note. There is no evidence that Mary Trunk gave the bank any notice of her intention to withdraw any funds from said savings account and according to the rules thereof three months' notice was required for the withdrawal of any sum over $1,000.

Our Defalcation Act of 1705, 1 Sm. L. 49, 12 PS §601, has been fully recognized during the past 232 years. The effect of this statute and of the doctrine of set-off is to extinguish by operation of law all but the balance due between debtor and creditor: Duffy v. 58th & Chester Avenue B. & L. Assn. et al., 325 Pa. 127; and the question arises: Did the bank, the garnishee, have the right to set off the deposit on hand when the attachment was served against Mary Trunk's debt, then matured? Under section 22 of the Act of June 16, 1836, P. L. 755, 12 PS §2113, a bank deposit or debt may be attached, subject, however, to the right of the bank to set off any lawful claim against the judgment debtor. Mr. Justice Linn, speaking for the Supreme Court in Aarons v. Public Service B. & L. Assn. et al., 318 Pa. 113, said that the bank could then or at any time exercise its right of set-off, because the note was a demand note, due without formal request for payment.

In the instant case the note was made payable without defalcation, but it did not provide, as was provided for in

the case of Aarons v. Public Service B. & L. Assn. et al., supra, for a lien on future property coming into the hands of the garnishee. The attaching creditor is an equitable assignee of the judgment debtor's interest in the matter in controversy. It takes that interest subject to any equity existing in favor of the garnishee or intervening third parties: Austin-Nichols & Co., Inc., v. Union Trust Co. et al., 289 Pa. 341; Duffy v. 58th & Chester Avenue B. & L. Assn. et al., supra.

What was the relationship existing between the parties at the time the attachment was served on May 23, 1932? The status of the parties was fixed on that date: Duffy v. 58th & Chester Avenue B. & L. Assn. et al., supra. The garnishee held a matured note in the sum of $1,505 and an unmatured note in the sum of $7,000. The attachment execution bound future deposits coming into possession of the garnishee bank up to the time of trial: Frazier et al., Execs., v. Berg et al., 306 Pa. 317. Money deposited in a bank ceases to be the money of the depositor and becomes the money of the banking institution in which it is deposited, whereupon the relation of debtor and creditor arises: Hober's Estate, 118 Pa. Superior Ct. 209; Reicheldifer's Appeal, 115 Pa. Superior Ct. 454.

The Act of 1705, supra, conferred the right of defalcation. The garnishee could have asserted this right in a suit by defendant for the deposit: Bennett et al. v. Campbell et al., 189 Pa. 647; and the service of the attachment execution had the effect of equitable assignment of the thing attached. It put the garnishee in the relation to the attaching creditor which it had sustained to its former creditor, defendant depositor here, and it may make the same defense to the attachment by evidence of set-off or of other equities that it might have made if sued by its original creditor: Aarons v. Public Service B. & L. Assn. et al., supra. Its, the garnishee's, demand note was due without any formal demand for payment; as between Mary Trunk, defendant, and the garnishee there was

mutuality of right. As to the garnishee, the right of set-off against the deposit of Mary Trunk was unquestionable and the same right existed against plaintiff, who had, in law, taken her place as the bank's creditor as such depositor: Bennett et al. v. Campbell et al., supra; and the garnishee may make the same defense to the attachment by set-off or other equities that it might have made if sued by the original creditor and depositor: Aarons v. Public Service B. & L. Assn. et al., supra.

Under section 22 of the Act of 1836, supra, providing for the attachment of a bank deposit or debt, subject to all lawful claims of the garnishee, a bank may set off, after attachment, against its liability on the deposit, a demand obligation of a depositor, and its omission to collect a demand obligation from a depositor does not estop the bank from exercising its right to set off the demand obligation against the claim of the depositor on his deposit in attachment proceedings against him: Adolph Bergman B. & L. Assn. v. Blaul et al., 318 Pa. 126.

While there is no evidence that the depositor gave notice for the withdrawal of funds in her savings account on the date in question, no doubt the notice was for the benefit of the bank and could be waived by it. The conduct of the bank indicates that it created such waiver and, the note having been payable on demand and due prior to the date of the attachment, it could have asserted its right at any time as against the depositor, and that right was not taken away by the attachment execution authorized by the Act of 1836: Hemperley v. Tyson et al., 170 Pa. 385; Bennett et al. v. Campbell et al., supra. Its right may be claimed or not at the option of the garnishee: Louden v. Tiffany, 5 W. & S. 367; Aarons v. Public Service B. & L. Assn. et al., supra; and need not be asserted until someone shall, in the words of the statute, "commence an action"; at which time the Act of 1705, provides: "It shall be lawful for such defendant to plead". If cross-demands are pleaded and proved they extinguish each other. The

right to set off may be asserted by a garnishee; according to the statute it need not be asserted until suit is brought.

Therefore, it was proper to appropriate and set off, and plaintiff has, on argument, recognized the validity of the garnishee's set-off and appropriation of the sum of $1,505 covering the demand note it then held against the deposit evidenced by defendant's savings account.

We now come to the question: Did the garnishee have the right to set off the balance of defendant's deposit evidenced by the savings account in the sum of $1,868.42? Was there mutuality of right between the parties? In the United States there are two rules governing this question, the majority and the minority rule. Pennsylvania is classed with the minority. The principle at the base of attachment execution is that the garnishee owes money to the judgment debtor or has in his possession money or property belonging to the latter, which he, the judgment debtor, has a legal right to require the garnishee to pay to him, except for the attachment: Fisher, for use, v. Mc-Farland et al., 110 Pa. Superior Ct. 184; and our courts have recognized, from the decision of Manufacturers' National Bank v. Jones, 2 Penny. 377, to the present time: Kurtz et al. v. County National Bank, 288 Pa. 472; Aarons v. Public Service B. & L. Assn., supra; Pearlman v. New burger et al., 117 Pa. Superior Ct. 328; that a bank has no lien upon money standing to the credit of one of its depositors for the amount of a note of such depositor discounted by the bank, but which has not matured, and the insolvency of the depositor, intervening before maturity of the note, cannot affect the question as against a creditor attaching the fund. A bank cannot set off against the claim of an attaching creditor the amount of unmatured notes endorsed by the depositor and discounted for him by it, though he is at the time insolvent: Dougherty Brothers & Co. v. Central National Bank, 9 W. N. C. 1; Manufacturers' National Bank v. Jones, supra; Aarons v. Public Service B. & L. Assn. et al., supra; Jones v. Manufacturer's National Bank, 99 Pa. 317.

In Dougherty Brothers & Co. v. Central National Bank, supra, the court held that where there is on one side a debt presently due and on the other a liability which will accrue, due at a future day, the debt cannot be set off at law against the liability; nor can it be so set off in equity. In such case the law recognizes that the purpose is that the customer, the depositor, may draw out at his pleasure the funds in his deposit. In Kurtz et al. v. County National Bank, supra, the Supreme Court stated:

"In Pennsylvania, a bank which is advised that . . . bankruptcy proceedings are inevitable, has no right to charge off the balance of deposits due the depositor and apply the amounts thereof to the payment of unmatured notes discounted for the depositor."

See full discussion of this subject in 43 A. L. R. 1325 and 51 A. L. R. 1477; Roig v. Tim, 103 Pa. 115; Hotchkiss, etc., v. Roehm, 181 Pa. 65.

This question was elaborately discussed in Southwark National Bank v. Beck, Admx., 98 Pa. Superior Ct. 213, where that court held that the garnishee could not set off an unpaid or unmatured obligation unless the creditor had protected itself by a contract with its debtor under which the former should have a lien upon any fund in its hands belonging to the latter, or the right to appropriate the fund or any part thereof under fixed conditions to the payment of a debt not due. The courts have recognized that to permit a bank to assume control of a depositor's money would give it the status of a creditor, that which it otherwise would not possess: Citizens National Bank v. Alexander, 120 Pa. 476; First National Bank of Lock Haven v. Mason, 95 Pa. 113. Furthermore, mutuality of right in a set-off is not circumscribed by the "right to bring an action", but the broader question may be and generally is of importance: Whose money or claim is proposed to be used as a set-off? This is the true equitable principle which governs such questions: Hunter, Receiver, v. Henning, 259 Pa. 347; Franklin Trust Co. of Phila., 319 Pa. 367. If it were otherwise, the deposi-

tory bank could, before its obligations matured, appropriate its depositor's funds which, no doubt, in many instances would make it, to say the least, unpleasant to innocent third parties dealing with the bank.

We therefore conclude that a valid set-off must be of a debt due at the time of the commencement of the action in which it is interposed, and if the claim is not then ripe for action it cannot be set off: Pearlman v. Newburger et al., supra; Thacher's Estate, 17 D. & C. 657; Maryland Cas. Co. v. National Bank of Germantown & Trust Co., 320 Pa. 129; Joseph Melnick B. & L. Assn. v. Melnick et al., 318 Pa. 120; Aarons v. Public Service B. & L. Assn. et al., supra; First National Bank of Pittsburgh v. Anglo-Oesterreichische Bank, for use, 37 F. (2d) 564. In the latter case Judge Thompson held that the rule that only demands which are mutually payable may be set off has been recognized in a long line of Pennsylvania decisions; that the New York cases definitely establish the same rule, which rule the Federal courts have consistently followed.

Is plaintiff entitled to interest on the fund attached? Where a debt is attached, as a general rule, interest is suspended during pendency of the attachment proceedings. This, however, is not the case where there has been collusion, unreasonable delay or litigation on the part of the garnishee. Where the garnishee has not been ready and willing to pay the debt in his hands to the party entitled, he is liable for interest; and, though he may not be bound to ask leave to pay the money into court to abide the contest, his willingness to pay and not litigate must appear: Jones v. Manufacturers' National Bank, supra; Rushton v. Rowe, 64 Pa. 63.

In the instant case it appears that the attachment was served on the garnishee on May 23, 1932, and interrogatories were filed and answered, but we do not know when. However, the garnishee admitted in the interrogatories to having had in its hands on May 21, 1932,

two days prior to the date the attachment was served, the sum of $3,373.44 in a savings account in the name of Mary Trunk, one of the defendants. Therefore, it would appear that the garnishee, not having paid over to the attaching creditor the funds attached, and, in lieu thereof, having defended litigation in an attempt to prevent the payment thereof, should pay interest on the sum of $1,-868.42, being the balance in said fund after the set-off of $1,505 due the garnishee from May 23, 1932, until March 5, 1933, the date the assets of the bank passed into the hands of the Comptroller of the Currency of the United States.

The next question that arises is whether plaintiff will be entitled to recover the full amount of the attached fund, $1,868.42, together with interest thereon from May 23, 1932, until March 5, 1933, or must the amount due it be determined by this court, and the payment of the amount ascertained to be due be made subject to the determination of the Comptroller of the Currency of the United States.

In Pestcoe v. Sixth National Bank of Phila. et al., 112 Pa. Superior Ct. 373, it was held that a State court has no jurisdiction to declare preferences as respects the moneys of a National banking association in the hands of a receiver or conservator. Upon the receivership of a National banking association the Federal law becomes the law of the distribution of the assets, and in Hober's Estate, supra, it was held that money deposited in a bank ceases to be the money of the depositor and becomes the money of the banking institution in which it is deposited. There the court said it was proper for the State court to fix the garnishee's indebtedness to defendant in the execution prior to the garnishee's insolvency, and that it was competent for the State court to determine, as between plaintiff in the attachment and the garnishee bank, what rights were acquired by the former as against the latter by the attachment; and its judgment, thus re-

stricted, could have been brought to the attention of the comptroller for his guidance in distributing the assets of the bank. See Earle v. Pennsylvania, 178 U. S. 449, where the State court's authority is fully discussed.

By virtue of the pleadings and stipulations, and from the facts found from the evidence, we make the following

### Conclusions of law

1. That the garnishee had the right to set off against the savings account of Mary Trunk the amount of its demand note, a matured obligation, $1,500 principal plus $5 interest, or the total sum of $1,505.

2. That the garnishee, First National Bank of Clarion, Pa., did set off as against the deposit of Mary Trunk, defendant, as shown by her savings account, the sum of $1,505 on May 23, 1932, which was a legal set-off against said account.

3. That plaintiff's attachment execution, served on the garnishee, the First National Bank of Clarion, Pa., on May 23, 1932, constituted an equitable assignment of the remaining amount, to wit, $1,868.42, in the savings account of Mary Trunk, defendant, and that on and after May 23, 1932, the Citizens Trust Company of Clarion, Pa., plaintiff, was the lawful owner of the remainder of the savings account in the name of Mary Trunk, in the sum of $1,868.42.

4. That on and after May 23, 1932, the First National Bank of Clarion, Pa., garnishee, lawfully owed to the Citizens Trust Company of Clarion, Pa., by virtue of the aforesaid attachment execution, the sum of $1,868.42, together with interest thereon from May 23, 1932, until March 5, 1933.

5. That, by reason of the insolvency, the taking over of the assets of the First National Bank of Clarion, Pa., by the Comptroller of the Currency of the United States and the appointment of a receiver therefor, the Citizens Trust Company of Clarion, Pa., has a legal claim against

James R. Mowry, receiver of the First National Bank of Clarion, Pa., the above named garnishee, in the sum of $1,868.42, together with interest thereon from May 23, 1932, until March 5, 1933, which judgment shall only determine what rights were acquired by plaintiff as against the garnishee by the service of the attachment, and by virtue thereof may be brought by plaintiff to the attention of the Comptroller of the Currency of the United States for his guidance in distributing the assets of the First National Bank of Clarion, Pa., now in receivership, unless exceptions are filed thereto within 30 days after the service of such notice.