**GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff,**

v.

**Richard J. TARR, Defendant,**

v.

**EQUIBANK, N. A., Garnishee.**

**Misc. No. 6810.**

United States District Court, W. D. Pennsylvania.

Sept. 29, 1978.

Stephen Laidhold, Makoroff, Laidhold & Safier, Pittsburgh, Pa., for plaintiff.

Sidney R. Finkel, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for garnishee.

Alfred Maiello, atty., for defendant, who did not appear at hearing or submit any legal memorandum.

## OPINION

SNYDER, District Judge.

General Electric Credit Corporation (GEC) seeks a determination of its right to funds deposited with Garnishee, Equibank, by GEC's debtor, Richard Tarr. Equibank claims the right to set off the total amount against a demand obligation owed by Tarr to Equibank. The underlying facts are not in dispute.

Richard Tarr was President and the chief executive officer of Metropolitan International, Inc. (MII), a Pennsylvania corporation engaged in the strip mining of coal. MII sought to borrow certain sums of money from Equibank as part of its normal business operations guaranteed by Tarr in consideration of a commitment to grant various future loans to MII. Sums well in excess of the amount in the account in question were subsequently loaned and remain unpaid.

On February 3, 1977, MII filed a voluntary petition in bankruptcy in the United States District Court before Equibank took any action.

On May 2, 1977, GEC filed suit against Tarr alleging he had perpetrated a fraud in financing the purchase of a 1972 Caterpillar Model D-9 Crawler Tractor. A default judgment was entered against Tarr in the amount of $31,526.00. GEC then commenced garnishment proceedings, and a writ of execution and interrogatories were directed to Equibank on June 15, 1977. On June 17, 1977, Equibank set off the sum of $9,956.85 from Account No. 513-292-805, maintained by Tarr, against the debt owed to it by MII.

GEC, a New York corporation, has commenced this diversity action to contest the legality of this set off and seeks release of $9,956.85 garnished by it at that account number, as well as counsel fees and interest.

### I.

█ It is well established under Pennsylvania law that a bank which has been garnished for a deposit belonging to a depositor may set off a matured obligation of the depositor. *Aarons v. Public Service Building and Loan Assoc.,* 318 Pa. 113, 178 A. 141 (1935); *Duffy v. Fifty Eighth and Chester Ave. Bldg. and Loan Assoc.,* 325 Pa. 127, 189 A. 307 (1936); *Atkins v. Canadian SKF Inc.,* 353 Pa. 312, 45 A.2d 28 (1946). The right of defalcation is conferred by the Act of 1705, 1 Sm.L. 49, Section 1, 12 P.S. § 601,[1] and the statutory right to execute against bank deposits specifically conditions that right subject to all lawful claims existing upon the deposit at the time of attach-

ment. 12 P.S. § 2113.[2] Nor is the bank's right to set off overridden by an attachment execution. *Aarons v. Public Service Building and Loan Assoc., supra,* 318 Pa. at 118, 178 A. 141, and that the right need not be asserted until someone shall commence an attachment execution. *Id.,* at 118, 178 A. 141.

Plaintiff has cited the case of *Schiff v. Schindler,* 98 Pa.Super. 207 (1929), contending that it stands for the proposition that a bank may not effect a set off after attachment execution has commenced. A close reading of the case reveals that *Schiff* is apposite to the *Aarons* doctrine, for it merely restates the holding in *Roig v. Tim,* 103 Pa. 115 (1883), that the debt in question must be mature at the commencement of the action in which it is interposed in order to effect a valid set off.[3]

█ In the case *sub judice,* it is clear that the debt which Equibank seeks to interpose against the attachment is mature. The

---

**1.** 12 P.S. § 601 provides:

"If two or more dealing together be indebted to each other upon bonds, bills, bargains, promises, accounts, or the like, and one of them commence an action in any court of this province, if the defendant cannot gainsay the deed, bargain or assumption upon which he is sued, it shall be lawful for such defendant to plead payment of all or part of the debt or sum demanded, and give any bond, bill, receipt, account or bargain in evidence; and if it shall appear that the defendant hath fully paid or satisfied the debt or sum demanded, the jury shall find for the defendant, and judgment shall be entered, that the plaintiff shall take nothing by his writ, and shall pay the costs. And if it shall appear that any part of the sum demanded be paid, then so much as is found to be paid shall be defalked, and the plaintiff shall have judgment for the residue only, with costs of suit. But if it appear to the jury that the plaintiff is overpaid, then they shall give in their verdict for the defendant, and withal certify to the court how much they find the plaintiff to be indebted or in arrear to the defendant, more than will answer the debt or sum demanded, and the sum or sums so certified shall be recorded with the verdict, and shall be deemed as a debt of record, [and if the plaintiff refuse to pay the same, the defendant for recovery thereof shall have a scire facias against the plaintiff in the said action, and have execution for the same, with the costs of that action.]"

The phrase in brackets was repealed by 12 P.S. § 602.

**2.** 12 P.S. § 2113 provides:

"The stock owned by any defendant in any body corporate, also, deposits of money in any bank, or with any person or body, corporate or politic, belonging to him, and debts due to him, shall be liable to execution, like other goods or chattels, subject nevertheless to all lawful claims thereupon, of such body corporate, or person."

**3.** Plaintiff cited *Baker v. National City Bank of Cleveland,* 387 F.Supp. 1137 (N.D.Ohio 1974), aff'd, 6th Cir., 511 F.2d 1016 (1975). In that case, the court was faced with the issue of whether a bank had taken the proper steps to exercise its right to set off prior to issuance of an order by the District Court enjoining bank set offs as part of the Penn Central bankruptcy proceedings. We are not here faced with the question of whether Equibank correctly exercised its right to set off as a procedural matter, but rather whether it could exercise the right after attachment execution. The Baker court noted, "service of process in garnishment does not defeat or take away that right, although the right is not asserted and the bookkeeping act of set-off not performed until after service of garnishment process." *Id.,* at 1147, citing *Cleveland Trust Co. v. Crothers,* 15 Ohio L.Abst. 445 (8 Dist.Ct.App.1933).

note in question, executed on January 27, 1977, for $81,000.00, is a demand note, which further provides that it becomes "immediately due and payable",

> "(3) upon death, dissolution, termination of existence, insolvency, assignment for the benefit of creditors or the commencement of any bankruptcy, reorganization, receivership or insolvency proceedings of, by or against any of the undersigned or any endorser or guarantor hereof . . ." (Exhibit 1 of Stipulation of Facts)

Filing a petition, then, was a default which caused the note to mature.

Tarr signed the Guaranty and Suretyship Agreement, which provides in material part:

> ". . . the Undersigned [Tarr] hereby guarantees the prompt payment to Bank [Equibank] at maturity of every note, check, bill of exchange, draft, trade acceptance, loan, advance, discount, and order for the payment of money, and all other obligations, in connection with which, either as maker, drawer, guarantor, endorser or otherwise, whether directly or contingently, Borrower [MII] is or shall hereafter become liable to Bank whether created directly or acquired by Bank by assignment or otherwise." (Exhibit 1 of Stipulation of Facts)

The Agreement also provides:

> "The liability of the Undersigned [Tarr] shall continue until payment is made of every Liability of Borrower now due or hereafter to become due, and until payment is made of any loss or damage incurred by Bank with respect to any matter covered by this Agreement." (Exhibit 1, Stipulation of Facts)

■ It should also be noted that the Guaranty and Suretyship Agreement (Paragraph 3) waived notice of presentment, demand for payment or protest of any of Borrower's obligations. It was not essential to activate the surety's liability on the note that Equibank attempt to secure payment from the principal before approaching the surety. Under Pennsylvania law, every written agreement made by one person to answer for the defaults of another subjects that person to the liabilities of suretyship, unless the contract specifically provides that it is not intended to be a suretyship agreement. 8 P.S. § 1. The Agreement here defined the terms "guaranty" and "guarantor" to include the terms surety and suretyship. Tarr therefore stood as a surety for MII. As contrasted with a guarantor, a surety, as well as his principal, is primarily liable upon the original undertaking upon default. *Plummer v. Wilson*, 322 Pa. 118, 185 A. 311 (1936).

■ Plaintiff further contends in its brief that even if Equibank had a right of set off, it failed to take steps necessary to enforce that right prior to attachment, and waived whatever rights it had in the deposit by allowing the Defendant to write checks against the account. This claim is without merit. The right to set off need not be asserted until someone shall commence a writ of attachment execution. *Aarons v. Public Service Building and Loan Assoc., supra,* 318 Pa. at 118, 178 A. 141; *Adolph Bergman Bldg. and Loan Assoc. v. Blaul,* 318 Pa. 126, 128, 178 A. 140 (1935). In *Aarons, supra,* 318 Pa. at 117, 178 A. at 142, the Court quoted with approval from *Roig v. Tim, supra,* 105 Pa. at 117, as follows:

> "The service of an attachment execution has the effect of an equitable assignment of the thing attached. It puts the garnishee in the relation to the attaching creditor which he had sustained to his former creditor. He may make the same defense to the attachment by evidence of set off or of other equities that he might have made if sued by his original creditor."

The Plaintiff has failed to call to this Court's attention any authority for the proposition that prior failure of action constitutes a waiver of the debt. Equibank merely chose not to exercise its right to set off until the account was threatened by the attachment. It had that right under Pennsylvania law.

An appropriate Order will be entered.